**IN THE UNITED STATES DISTRICT COURT FOR THE**
**MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| **SYED WAHIDI,** | ) | |
| | ) | |
| **PLAINTIFF,** | ) | |
| | ) | **Case No.:** |
| **V.** | ) | |
| | ) | |
| **PHARMAVITE LLC,** | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| **DEFENDANT(S).** | ) | |
| | ) | |

**COMPLAINT**

## JURISDICTION

1.      This suit is authorized and instituted under Title VII of the Act of Congress known as the "Civil Rights Act of 1964," as amended, the "Civil Rights Act of 1991;" 42 U.S.C. § 2000e, et seq. (Title VII).

2.      This suit is authorized and instituted under 42 U.S.C. § 1981. This is a suit authorized and instituted under "Section 1981."

3.      Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) within 180 days of the last discriminatory act (Exhibit A).  The plaintiff further sued within ninety (90) days after receipt of the right-to-sue letter issued by the EEOC (Exhibit B).

**PARTIES**

4.      Plaintiff, Syed Wahidi, ("Plaintiff" or "Wahidi") is a resident of Buda, HaysHays County, Texas, and performed work for the Defendant in the counties composing the Middle District of Alabama during the events of this case.  Thus, under 28 U.S.C. § 1391(b), venue for this action lies in the Northern Division.

5.      Defendant Pharmavite LLC ("Defendant") is a company registered and doing business in the State of Alabama and has sufficient minimum contacts with the State of Alabama. It is subject to service of process in Alabama.

6.      Defendant employed at least fifteen (15) people during the current or preceding calendar year.

7.      Defendant employed at least five hundred (500) people during the current or preceding calendar year.

**FACTS**

8.      Plaintiff incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

9.      Plaintiff is a person of Pakistani National origin.

10.     Plaintiff is a person of Asian ancestry.

11.     Plaintiff began his employment with defendant on or about August 6, 2009 as a Controls Engineer.

12.     In or about 2017, Wahidi was promoted to Senior Automation Controls Engineer.

13. During the years between 2009 and 2022, Plaintiff received no negative performance appraisals.

14. Plaintiff's salary was steadily increased throughout his tenure.

15. In 2019, Wahidi's wife experienced a medical crisis.

16. After the crisis, Wahidi asked his manager for time off to address his wife's medical needs.

17. After the request, Lance Buchanan, Plaintiff's manager, told Wahidi that he was too valuable to be out and asked him to work from home instead of taking leave.

18. Wahidi agreed to work remotely for half the day.

19. Later, the work from home arrangement was modified to eight hours a week from home.

20. In late 2022, Chris Windham became Wahidi's manager.

21. Within months, Windham lowered his performance appraisals.

22. Windham criticized Wahidi's degree because he received it from a university in Pakistan.

23. Wahidi's university is fully accredited, and the degree is transferable to the United States.

24.    Wyndham also said that Wahidi was not a good controls engineer, and that he was better suited to IT, a job that is associated with South Asian people like himself.

25.    In March 2023, Windham gave Wahidi a performance appraisal, and for the first time in his career with the company, his review was rated at the origin point which indicated average performance.

26.    Wahidi's performance was dropped to zero level from a high performer given by his ex-supervisor without justification.

27.    There was no change in Plaintiff's objective performance of his duties.

28.    All of Plaintiff's projects were on target.

29.    There were no delayed or failed projects.

30.    Despite that, Wahidi was marked lower than he had been in the past.

31.    Several months later, during the mid-year review, Windham said that Plaintiff had not achieved goals that had never been conveyed.

32.    When Windham rated him poorly, he said that it was because of the eight hours per week that Wahidi was working from home to care for his sick wife.

33.    Wahidi explained that the days working from home were provided for the company's convenience to avoid the need to place him on FMLA.

34.    Windham did not relent.

35.    Nor did he offer Wahidi FMLA.

36.    Windham also began to verbally berate Wahidi in front of other employees.

37.    Windham also shared Wahidi's medical condition with his wife without his consent when he was very sick in July 2023.

38.    Windham then indirectly asked Wahidi to work remotely while he was sick and to explain his medical condition upon return.

39.    Wahidi was the only person of Asian ancestry on the team.

40.    Windham did not berate white employees the same way.

41.    Windham also complained that Wahidi was paid a higher salary than he should have been, implying that a Pakistani should not get paid more than Americans.

42.    Windham also criticized Wahidi's use of his vacation time to visit Pakistan.

43.    Windham ridiculed Wahidi's country of origin and said that Wahidi should visit America instead because it is a better country.

44.    After the mid-year review, Wahidi began to do more to attempt to meet the expectation.

45.    Windham began to reassign projects to set Wahidi up for failure.

46.     Specifically, he began taking projects assigned to Wahidi that were on target for completion and giving them to Alfred Spies, who is a person of European ancestry.

47.     He also gave Wahidi failing projects that were previously assigned to himself and Spies.

48.     Wahidi complained about Windham to Luke Dorsett in or about December 2023.

49.     Dorsett did nothing.

50.     Windham told Wahidi that he knew he had complained to Dorsett, and that was not good.

51.     Even though Windham gave failing projects to Wahidi, he was able to improve the failed projects.

52.     Then, in February 2024, Windham gave Wahidi a poor performance review even though the projects the review was based upon were largely headed by Spies or by Windham himself.

53.     When he received the negative review, Wahidi asked for specifics about what had been done wrong.

54.     Windham could not provide any specifics.

55.     Wahidi complained to Human Resources and Luke Dorsett in February 2024, disputing the accuracy of the feedback.

56.     They did nothing.

57.     Upon information and belief, Spies did not get any feedback for failing to finish his projects.

58.     Then in March 2024, Windham began to reassign additional tasks that were previously assigned to Spies to complete.

59.     Windham then gave Wahidi unreasonable deadlines to complete the projects.

60.     Windham also failed or refused to provide Wahidi training on the equipment he was to be newly responsible for.

61.     Wahidi reported that he was not given the training that Spies received to do the job.

62.     Windham refused to approve the contractor resources Wahidi needed to get the work done.

63.     Upon information and belief, other people who are not Asian were given access to the resources Wahidi was denied.

64.     Windham also advised people not to talk or collaborate with Wahidi.

65.     Wahidi, through his own efforts working day and night, taught himself how to perform the duties and finished the work on time.

66.     At the 2024 mid-year review, Windham acknowledged that Wahidi had met the goals but did not bring the rating back up to a level that met expectations.

67.     When Wahidi questioned the review, Windham had no negative feedback on performance but said instead that his review was not higher only because Wahidi's earlier review was so low.

68.     Just a couple of months later, Windham placed Wahidi on a performance improvement plan after he was given three projects to finish in short succession.

69.     Windham had also asked Wahidi to work on another of Spies' projects.

70.     The projects were then reassigned and given to Spies.

71.     Wahidi then sent an email to the project team members saying that he had been removed from the project.

72.     In June 2024, Windham sent Wahidi to work on a project in California.

73.     While Wahidi was working in California, Windham told Wahidi not to work on the Spies project assigned by Windham.

74.     Then, when the project failed, Wahidi was blamed for the failure.

75.     The project was programmed by another person, and Wahidi was not involved in the failure.

76.     The project had only been Plaintiff's responsibility for a matter of weeks, and he had been given permission not to work on it while away.

77.     After that failure, Windham put Wahidi on a performance improvement plan.

78.    Wahidi then filed an internal complaint with Human Resources in late September or early October 2024.

79.    Wahidi also filed a Charge of Discrimination against the company on or about October 17, 2024.

80.    During this time. Wahidi had a health problem brought about by the significant job stress, that required him to take a short medical leave.

81.    When he returned, Windham continued to accuse Wahidi of wrongdoing.

82.    But each time Windham and his co-workers would accuse him, they would not listen to Wahidi's version of the story before blaming him, including Human Resources.

83.    Then, when Wahidi provided details, it became clear that it was not his fault.

84.    After Wahidi filed a charge of discrimination and hired an attorney, he was placed on paid leave while the company attempted to resolve the claims.

85.    After discussions to resolve the claim broke down, the company terminated Wahidi's employment on or about January 14, 2025, and refused to tell him the specific reason for his termination.

86.    Upon information and belief, Wahidi was replaced by Spies, a person who is of European ancestry.

87.    Upon information and belief, Spies has not reported discrimination based on national origin or race.

## COUNT I TITLE VII - RACE DISCHARGE

88.    Plaintiff incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

89.    Plaintiff is a person of Asian ancestry.

90.    Plaintiff was qualified for the Senior Automation Controls Engineer position.

91.    Defendant's employees terminated Plaintiff's employment on or about January 14, 2025.

92.    Other people outside Plaintiff's protected class, including Alfred Spies, engaged in the same or similar conduct that Defendant accused Wahidi of, allegedly not completing projects satisfactorily, but remained employed.

93.    Upon information and belief, Spies replaced Wahidi.

94.    Defendant's actions in terminating Plaintiff's employment violated Title VII.

95.    Defendant did not terminate Spies for the same or similar conduct.

96.    Defendant's Race was a motivating factor in Defendant's decision to terminate Plaintiff's employment.

97.     Because of Defendant's discriminatory decision made in whole or in part because of his race, Plaintiff has lost pay and continues to be paid less.

## COUNT II 42 U. S. C. § 1981 DISCHARGE

98.     Plaintiff incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

99.     Plaintiff is a person of Asian ancestry.

100.    Plaintiff was qualified for the Senior Automation Controls Engineer position.

101.    Defendant's employees terminated Plaintiff's employment on or about January 14, 2025.

102.    Other people outside Plaintiff's protected class, including Alfred Spies, engaged in the same or similar conduct, allegedly not completing projects satisfactorily, but remained employed.

103.    Spies is a person of European ancestry.

104.    On or about January 14, 2025, Defendant terminated Plaintiff's employment.

105.    Upon information and belief, Spies replaced Wahidi.

106.    But for Plaintiff's race, he would not have been terminated.

107.    Because of Defendant's discriminatory decision made in whole or in part because of his race, Plaintiff has lost pay and continues to be paid less.

108.   Because of Defendant's violation of 42 U. S. C § 1981, Plaintiff has been damaged, suffering loss of pay, benefits, and mental anguish.

## COUNT III TITLE VII RETALIATION (RACE)

109.   Plaintiff incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

110.   Plaintiff was qualified for his position and able to perform the essential functions of the job.

111.   On or about October 17, 2024, Plaintiff engaged in protected activity, when he reported discrimination based on race.

112.   On or about January 14, 2025, terminated Plaintiff's employment.

113.   Other people outside Plaintiff's protected class, including Alfred Spies, engaged in the same or similar conduct, allegedly not completing projects satisfactorily, but remained employed.

114.   But for Plaintiff's protected activity, Defendant would have retained Plaintiff in his position as a Senior Automation Controls Engineer.

115.   Defendant violated Title VII by terminating Plaintiff for engaging in protected activity.

116.   Because of Defendant's violation of Title VII, Plaintiff has been damaged suffering loss of pay, benefits, and mental anguish.

## COUNT IV TITLE VII RETALIATION (NATIONAL ORIGIN)

117.   Plaintiff incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

118.   Plaintiff was qualified for his position and able to perform the essential functions of the job.

119.   On or about October 17, 2024, Plaintiff engaged in protected activity, when he reported discrimination based on national origin.

120.   On or about January 14, 2025, terminated Plaintiff's employment.

121.   Other people outside Plaintiff's protected class, including Alfred Spies, engaged in the same or similar conduct, allegedly not completing projects satisfactorily, but remained employed.

122.   But for Plaintiff's protected activity, Defendant would have retained Plaintiff in his position as a Senior Automation Controls Engineer.

123.   Defendant violated Title VII by terminating Plaintiff for engaging in protected activity.

124.   Because of Defendant's violation of Title VII, Plaintiff has been damaged suffering loss of pay, benefits, and mental anguish.

## COUNT V 42 U. S. C. § 1981 RETALIATION

125.   Plaintiff incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

13

126. Plaintiff was qualified for his position and able to perform the essential functions of the job.

127. On or about October 17, 2024, Plaintiff engaged in protected activity, when he reported discrimination based on race.

128. On or about January 14, 2025, Defendant terminated Plaintiff's employment.

129. Other people outside Plaintiff's protected class, including Alfred Spies, engaged in the same or similar conduct, allegedly not completing projects satisfactorily, but remained employed.

130. Upon information and belief, Plaintiff was replaced by Spies, who had not engaged in protected activity.

131. But for Plaintiff's protected activity, Defendant would have retained Plaintiff in his position as a Senior Automation Controls Engineer.

132. Defendant violated Title VII by terminating Plaintiff in whole or in part for engaging in protected activity.

133. Because of Defendant's violation of the Title VII, Plaintiff has been damaged suffering loss of pay, benefits, and mental anguish.

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff respectfully prays for the following relief:

A.    Grant Plaintiff a permanent injunction enjoining the Defendant, its agents, successors, employees, attorneys and those acting with the Defendant and at the Defendant's request from continuing to violate the terms of Title VII of the Civil Rights Act of 1964;

B.    Grant Plaintiff a permanent injunction enjoining the Defendant, its agents, successors, employees, attorneys and those acting with the Defendant and at the Defendant's request from continuing to violate the terms of 42 198 U.S.C. §1981.

C.    Enter an Order requiring the Defendant to make Plaintiff whole by awarding reinstatement to the position he would have had, had he not been terminated;

D.    Award him back pay, with employment benefits, front pay, liquidated damages; compensatory damages, special damages; punitive damages nominal damages;

E.    Attorneys' fees and costs;

F.    Plaintiff requests that the Court award Plaintiff equitable relief as provided by law; and,

G.    Any different or additional relief as determined by the Court to which Plaintiff is entitled.

/s/ *Kira Fonteneau*

Kira Fonteneau

**OF COUNSEL:**

THE WORKERS FIRM LLC

2 North 20th St, Suite 900
Birmingham, AL 35203
(404) 382-9660
kira@theworkersfirm.com

**PLEASE SERVE DEFENDANT AS FOLLOWS**

**Pharmavite LLC**

**4701 Northpark Drive**

**Opelika, AL 36801**

**Corporation Service Company**

**641 South Lawrence Street**

**Montgomery, AL 36104**